COOK *vs.* THE COMMISSIONERS OF HOUSTON COUNTY.

[This case was argued at the last term and the decision reserved. Jackson, Justice, being disqualified, Judge McCutchen, of the Cherokee circuit, was designated by the governor to preside in his place.]

1. Where by order of the chancellor a reference of matters in an equity cause had been made to a master in equity, and the master having failed to act, the chancellor, at a subsequent term, passed an order

withdrawing the reference from the master, and referring the same matters to a different person named in the order and styled " *Master pro hac vice,*" this latter order· is not void.    The chancellor may, in the exercise of a sound discretion, change a reference from one master to another, or from a master to an auditor.

2.  Where the chancellor passing such interlocutory order, did not preside on the final trial, and no objection to the passage of the order appears to have been made at the time—no exception thereto appearing in the record—this court cannot review such action of the chancellor.

3.  Where the order of reference to an auditor requires that exceptions to his report shall be filed within twenty days after notice of the filing of the report in the clerk's office, a party duly notified cannot file exceptions after the time limited without leave of the court.

4.  If a party has been prevented by good cause from filing his exceptions within the time limited, he should apply to the court without unreasonable delay for an extension of time to file his exceptions, and upon his failure to do so during four successive terms of the court thereafter, without showing any excuse for this delay, this court will not interfere with the discretion of the chancellor in refusing the application, and in striking the exceptions on the ground that they had been filed without leave of the court after the time limited had expired—especially where no very satisfactory excuse is shown why the exceptions were not filed within the time limited.

5.  Where an auditor's report has been received and allowed by the court, and the report is not excepted to, there is no issue for the jury to try as to any matter covered by the report, and the chancellor will pronounce judgment thereon without the intervention of a jury. Article VI, section XVIII, paragraph I, of the constitution, which declares that "the right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate," is not in conflict with the principle above enunciated.

6   Where the statute of limitations is pleaded and insisted on at the trial, and the facts on which it is based, together with the action of the auditor in relation thereto, appear in the report, the court must, in its final decree, pass upon the question of law thus raised, though no written exceptions to the auditor's report be on file, the ruling of the court on the statute of limitations being excepted to.

7.  Four years after the accrual of the cause of action is the period of limitation within which, in general, a suit upon an account must be brought by a county to recover money illegally drawn from its treasury on false accounts.   Yet where a sheriff—while in office as such—draws divers sums of money, at different times, from the treasurer of the county on false and fraudulent accounts and vouchers for insolvent costs claimed as due him, and for official services claimed to have been rendered—some of the payments having been

made to him within less than, and others more than, four years before suit was commenced, the statute of limitations does not commence to run in favor of the sheriff during his continuance in office.

Equity. Master. Auditor. Practice in the Superior Court. Time. Constitutional law. Jury. Statute of limitations. Before Judge Crisp. Houston Superior Court. November Adjourned Term, 1877.

For the facts of this case, see the opinion.

Eli Warren ; B. M. Davis ; W. S. Wallace ; S. Hall, for plaintiff in error.

S. D. Killen ; Lanier & Anderson ; H. M. Holtzclaw, for defendants.

McCutchen, Judge.

On the 15th day of September, 1873, a bill in equity was filed in the Houston superior court by the ordinary of that county against John R. Cook. Pending this suit, a board of commissioners of roads and revenues having been established for said county, they, as such commissioners, were made complainants instead of the ordinary. The object of the bill was to recover, in behalf of the county, numerous sums of money, amounting in the aggregate to $17,276.00, which the bill charges had been drawn by said Cook, while acting as sheriff of Houston county, from the treasury of said county, on false and fraudulent accounts. Cook held the office of sheriff from the 24th day of August, 1868, up to the 9th day of February, 1871. The payments by the county treasurer to him were very numerous, and at different times, extending through his term of office. The accounts were mostly for insolvent criminal costs, claimed as due to the sheriff and other officers, and the balance was for extra services and other services and expenses claimed to have been rendered and incurred. The larger portion of

these payments were made to Cook within four years before the bill was filed, yet a considerable number of them, amounting to a considerable sum in the aggregate, and which were allowed and included in the decree against Cook, were made more than four years before the filing of complainants' bill. The statute of limitations was pleaded and insisted on by Cook. At the May term, 1874, the cause was, by order of court, referred to E. F. Best, master in equity. He failed to act, and at the May term, 1875, another order of court was passed by Hon. B. Hill, the presiding judge, withdrawing the reference from said Best, master in equity, and making a reference of the cause to W. B. Nottingham, styling him "master *pro hac vice.*" The order of reference required that the report should be filed in the clerk's office at least thirty days before the next succeeding term of the court, and that within five days after the filing of the report of the "master *pro hac vice,*" written notices of such filing should be served on the parties to the suit. The order further required that the parties desiring to except to the report should file their exceptions in the clerk's office within twenty days after such notice served on them.

The auditor (Nottingham) heard the cause, and made and filed his report in the clerk's office within the time fixed by the order of reference, and he also served the parties with written notice as required by the order and within the time required.

No exceptions to the report were filed within the time limited by the order. But a few days after the expiration of the time, counsel for Cook filed exceptions in the clerk's office. This was done without leave of the court. Nor was any application made to the court for leave to file exceptions, or for any extension of time for the purpose, at the ensuing term, or at any term thereafter, until the term at which the case was tried, more than two years thereafter.

Cook's exceptions were prepared by Messrs. Grice & Davis, two of his counsel who were present during the

whole trial before the auditor, and were actually engaged in conducting his defense, one of whom examined the witnesses. The exceptions were fully prepared in time to have filed them within the time limited. They were not filed because General Warren, another of Cook's counsel, was then ill with an attack of rheumatism, and desired to see the exceptions before they were filed. General Warren was present during the greater part, but not during the whole, of the trial before the auditor. It appears that the exceptions were filed just as they were originally drawn by Grice & Davis, and it does not appear that they were ever submitted to General Warren's examination or criticism at any time.

The final decree was made at the February adjourned term, 1878, before Judge CRISP, the successor of Judge HILL. At this term the court sustained the motion of complainants, and dismissed the defendant's exceptions on the ground that they had not been filed within the time limited by the order of reference, and the report of the auditor was approved and allowed by the court. At this same term the defendant moved to quash and disallow the report of Nottingham, " master *pro hac vice*," on the ground, 1st, that there is no such officer as a master *pro hac vice*; 2d, that the cause having been referred to Best as master, could not have been withdrawn and referred to another without defendant's consent ; that the court had no jurisdiction to make this change of reference, and that the report of Nottingham was a nullity and should not be allowed. This motion was overruled by the court. After the exceptions were dismissed and the report was allowed by the court, a decree was rendered by the chancellor without a verdict by a jury, on the facts as reported by the auditor and in accordance with the report, against Cook for $9,385.25.

To which defendant Cook excepted.

1. The fact that Nottingham is styled "*master pro hac vice*" in the order of court changing the reference of the cause from the master to him, does not affect the validity of

the appointment. It might have been more accurate to have styled him auditor. But the nature of his office and the duty he was to perform are plainly set forth in the order making the change of reference.

2. Judge Hill passed the interlocutory order changing the reference and substituting Nottingham in the place of Best, the master to whom the reference was originally made. To this order changing the reference no exceptions were taken and certified at the term at which it was passed. Nor does it appear that any objection was ever made to it until the term at which the final decree was made before Judge Crisp, who was the successor of Judge Hill. Under these circumstances, this court cannot inquire whether this order made by Judge Hill was in accordance with sound legal discretion or not.

3. The order of reference had fixed the time within which the parties should file their exceptions to the report as hereinbefore fully set forth. The time limited having expired without any exceptions being filed, the plaintiff in error could not legally file his exceptions afterwards without obtaining leave of the court for this purpose.

4. In matters resting in legal discretion, the courts favor the diligent, but not the negligent. Where parties are prevented by good cause from filing their exceptions within the time fixed for that purpose, they should see to it that they are guilty of no unreasonable delay in applying to the court for an extension of time. If delay having the effect to protract the litigation exists before the application is made, some reasonable excuse for this delay must be shown to the court, as well as the excuse for the original failure, before any extension of time should be granted. The application should be made at the first term at which it could be done. In the case at bar, four terms were allowed to elapse without any application to the court, and for which no excuse is offered. And besides this, the reasons assigned why the exceptions were not filed within the time originally limited are by no means satisfactory.

5. The plaintiff in error insists that the chancellor erred in rendering a decree on the facts as reported by the auditor without any verdict of a jury, and that he was thus deprived of the right of trial by jury as secured by the constitution, article 6, section 18, paragraph 1, which declares that "the right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate."

The right of trial by jury guaranteed by this provision of the constitution relates to the trial of issues of fact, not to the trial of issues of law. Issues of law are to be tried by the court. Our statute provides that "the report of the master or auditor, when returned to court, shall be subject to exceptions for such time as the court may allow, and the exceptions so filed shall be the only issues of fact submitted to a jury, so far as the matters referred are concerned." Code, §4203.

Of course a reasonable time would have to be allowed by the court for the parties to except. If either party desires to controvert any fact contained in the report, he can do so only by filing his exceptions thereto. Upon any issue of fact thus made, he is entitled to his trial by jury. If he makes no such issue, he thereby elects to stand upon the report as true so far as the matters of fact therein reported are concerned. And nothing is left to be done but for the court to pronounce upon the matters of law involved, or arising upon the facts as shown by the report.

Where the whole of the facts in litigation are referred to the auditor, and where the report also covers the entire facts, of the case, the chancellor enters the decree without the intervention of a jury. Code, §4206.

In the case before us, the entire facts were referred to the auditor, and his report covered the whole case; and there having been no exceptions legally filed, there were no issues of fact to be tried, and the chancellor properly entered the decree.

Sections 3097 and 3138 of the Code must be read and construed in connection with sections 4203 and 4506, above

referred to, so as to give effect to all without making one section unnecessarily nullify another. Section 3097, in express terms, authorizes the reference of a part only of the facts to a master or auditor, and in such case the report would have to be confined to the facts referred, and could not legally go beyond the reference. And if the facts not referred were controverted facts, a jury would have to pass upon them whether the report upon the other facts which were referred was excepted to or not. Where a portion only of the controverted facts in litigation are referred, the parties have a right to go before the jury. Where the last clause of this section declares that " the final decision upon the facts shall be by a special jury," it refers to the decision of *controverted* facts—to issues of fact made up according to law or the rules of pleading. Any other construction would involve the absurdity that the legislature intended that the jury should pass upon the existence of facts though such facts were admitted by the parties and not in controversy between them. There can be no propriety in a jury, or any other tribunal, passing on the existence of facts which are not controverted between the parties to the litigation.

6. The statute of limitations was pleaded and relied on by Cook, who was defendant in the court below. He relied on this plea before the auditor, and also before the court on the final hearing of the cause. The chancellor's decree was for the exact amount which the auditor's report showed to be due from Cook to the county; and the report set forth at length the numerous small payments made to Cook, and the times of the several payments. The report contained all the facts necessary to enable the court to determine whether the whole or any part of the sum decreed to complainants was barred by the statute or not; and plaintiff in error excepted to the ruling and decree of the chancellor on this ground.

Under these circumstances, though there were no written exceptions to the auditor's report on file, we hold that the

plaintiff in error had the right to insist before the court on the final hearing upon his plea of the statute of limitations. As all the facts bearing on this question were ascertained and appeared in the report, it became simply a question of law whether, under the facts as reported, any portion of the complainants' claim was barred; and if the auditor had erred in his legal conclusions by reporting and allowing to complainants any items which were barred by the statute, such error of law should have been corrected by the court upon its attention being called to it on the final hearing. But .we do not find any error on this point which could possibly prejudice the plaintiff in error.

7. Three several pleas of the statute of limitations were filed by defendant in the court below. One year, three years and four years being severally pleaded as the period of limitations applicable to this case. The one year period is insisted on upon the ground that our Code, section 507, prescribes one year as the period within which all claims *against* the county must be presented after they accrue. It is claims " *against* " the county only that are here referred to. It is clear that this section has no applicability to the case before us. It is equally clear that three years is not the period of limitation applicable. The bill in this case was in no sense a bill of review (as insisted upon by counsel for plaintiff in error), which the statute requires to be filed in three years.

We hold that the general rule is that four years after the accrual of the cause of action is the period of limitation within which a suit upon an account must be brought by a county, to recover money illegally drawn from its treasury on false accounts.

Yet we hold that the case at bar falls under an exception to this general rule, and that under the circumstances of this case the statute did not commence to run in favor of the sheriff, Cook, against the county during his continuance in the office of sheriff of that county, and that, as all of the payments were made to him during his continuance in

office, none of them would have been barred until the expiration of four years after he ceased to be sheriff. It will be observed that all of the accounts upon which the moneys were drawn were accounts in favor of the sheriff, and claimed to be due him for official services, and for expenditures incurred in the discharge of official duties, or for the benefit of the county in some way. The greater portion of these claims were for insolvent criminal costs. The auditor's report (which the decree followed) allowed to Cook every payment which appears to be just, holding him responsible to the county only for those items which the report shows to be false or fraudulent. The auditor held that the statute of limitations did not commence to run in favor of Cook as to any of the items, until the date of the last payment to him, which occurred a very short time before he ceased to be sheriff.

We cannot concur in this holding. There was no mutuality or alternate course of dealing between the sheriff and the county. The accounts were all on one side in favor of Cook against the county. The county never extended any credit to Cook. Simple payments by the county to Cook on his claims did not supply the necessary mutuality. In order to protect the older items of a running account against the bar of the statute on the ground that one ∠r more of the items were contracted within the statutory period, the element of mutuality must exist; there must have been an alternate course of dealing, a credit extended to each party. Simple payments alone by the debtor to the creditor will not constitute the required mutuality. There must be credit extended to each party, so that each can be regarded as the creditor as well as the debtor of the other, their claims constituting sets-off against each other. Angell on Limitations, §149; Ingraham *vs.* Sherard, 17 Serg. & Rawle, 347; 17 California R., 344; Norton, *vs.* Larco, 30 *Ib.,* 126.

Though it appears that the claims of Cook were false and fraudulent, yet it does not appear from the auditor's report, or otherwise, that there was any concealment or artifice

used by Cook to cover up or hide the nature of his transactions and prevent investigation or suit. In other words, he was not guilty of any fraud by which the complainants were debarred or deterred from commencing their suit at an earlier period, so as to prevent the running of the statute on this ground. Code, section 2931.

Our ruling upon the statute of limitations in this case stands upon ground of public policy as well as upon the peculiar relation that the sheriff, as such, sustained towards the county while he was, by color of his office, making himself the creditor of the county, and thus getting possession of its funds.

The relation that subsists between the office-holder and the public is peculiar. Though often analogized to the relation of principal and agent among private persons, yet there are differences that separate the two very widely.

Among private persons, the principal can at all times keep watch over the conduct of his agent, and he has the stimulus of interest to induce him to do so. But the public has to depend upon its officials to protect its interests. It thinks and acts through its public servants. Indeed, it has no other direct means of either thought or action. The very best checks that the law can provide to protect the public against official corruption often prove ineffectual. Experience shows how difficult it is to detect official delinquency and bring the delinquent to account while he remains in his office.

In what I have now to add upon this subject, I speak for myself alone, and not for any other member of the court. It seems to me that our ruling on the statute of limitations in this case amounts to a limited and temporary application of the common law rule that the statute does not run against the government: limited, because it applies only to demands of the public against its own officials, and temporary, because the statute is suspended only during the continuance of the official relation.

Let us see if this ruling cannot stand upon the ground

that it is an unrepealed remnant of the common law doc-
trine referred to.

The repealing statute was the act of 5th of March, 1856,
pamph., p. 237.   This act was intended as a general statute
of limitations; and after prescribing limitations for the
various causes of action, it provides in §38, " That when by
the provisions of this act, a private person would be barred
of his rights, the state shall be barred of her rights under
the same circumstances."

It is a rule of construction that no general words in a
statute of limitations will include the state; the state can
only be bound by express words, or clear implication.

The same rule of construction would seem to require
that no act of limitations affecting the public in express
terms should be extended, to the injury of the public, be-
yond what the language of the act necessarily requires.

By this act of 1856, the state is to be barred of its rights
only "under the same circumstances" where a private per-
son would be barred.   In other words, it is only in cases
where "the same circumstances"—that is to say—the same
surroundings and conditions exist in the case of the state
as exist in the case of the private person, that the law of
limitations applicable to the latter is by this statute made
applicable to the former.

Of course exact identity of circumstances ought not to
be required.   All that is insisted on is, that the circumstan-
ces and surroundings in the case of the state should so sub-
stantially correspond with the circumstances and surround-
ings of the case of the private person, as to make it appear
reasonable that the legislature intended by the words used
to put the two cases on the same footing..

I am aware that it has been questioned whether the com-
mon law doctrine which protects the state from loss by
lapse of time applies to counties at all.   The reason of the
rule is founded "in that great public policy of preserving
the public rights, revenues and property, from injury and
loss by the negligence of public officers." Angell on Lim.,
section 36.

The reason of the rule, it seems to me, applies with as much force to a county as to the state. Indeed, a county is but a division of the state—a division made not for the purpose of conferring any special privileges or immunities upon its inhabitants, but made for the purpose and as a means of more effectually administering the general laws of the state, and what of autonomy is conferred upon coun ties is conferred in furtherance of this general object and purpose.

Judgment affirmed.