SWORDS *et al. v.* WALKER *et al.*

There was no error in refusing to grant a mandamus absolute in this case.

FEBRUARY 28, 1914.

Petition for mandamus. Before Judge James B. Park. Morgan superior court. May 17, 1913.

In February, 1913, John B. Swords, L. C. Swords, E. A. Bond, B. W. Roberts, C. N. Langford, and George W. Crisp filed an application for the writ of mandamus against P. G. Walker, W. P. Bearden, G. M. Gaissert, Jake Saye, and James Malcom, as county commissioners of Morgan County, to compel them to institute suit against H. C. Fears, H. A. Davis, J. G. Herring, G. M. Gaissert, and Jake Saye, former county commissioners, and E. L. Walker, treasurer of Morgan County, and E. W. Butler, trustee, for recovery of $10,000, as having been illegally appropriated in 1907. It was alleged as follows: The plaintiffs had made a demand upon the defendants to institute such a suit, and they had refused to do so. The former commissioners, above named, on November 24, 1906, passed an order and caused the same to be recorded on the minutes, subscribing the sum of $10,000 toward the establishment of the district agricultural college in Morgan County; and on February 14, 1907, the same commissioners drew a warrant on E. L. Walker, the treasurer of the county, for the amount stated, payable to E. W. Butler, trustee. Upon presentation of the warrant the treasurer paid Butler the amount thereof out of the funds of Morgan County that were then in his hands as treasurer, to be disbursed according to law for the payment only of legal expenses and claims against the county. The money so applied came into the hands of the treasurer from the levy and collection of taxes for the support of the county government for the year 1907. The levy of the taxes was made in accordance with the statute, and the commissioners had no power to levy a tax for any other purpose than those specifically mentioned in the order of levy. The board of commissioners had no power to levy a tax to raise money for establishing a district agricultural college, no tax was levied for that purpose, and no part of the $10,000 so appropriated arose from any tax that had been levied for such purpose. When the appropriation was made the commissioners knew that they had no authority to draw the warrant, but it was drawn by them for the deliberate purpose of misappropriating the funds of the county in the hands of the treasurer. The treasurer also knew that the warrant was illegal, and that the payment thereof by him was a misappropriation of the funds of the county, and illegal. The sum so paid has never been returned to the county, but it is now in the hands of E. W. Butler, trustee. No suit has been brought to re-

quire him to account for it, and the county authorities have failed or refused to take any action for its recovery.

Upon presentation of the petition to the judge, the defendants were ordered to show cause at the court-house in Morgan County, on March 8, 1913, why the writ of mandamus should not issue as prayed. In response to the rule, the defendants filed an answer, admitting the subscription of $10,000, the issue of a warrant therefor, and the payment of the warrant by the treasurer, and alleging as follows: The payment was made to E. W. Butler as trustee for the agricultural college of the eighth congressional district, and was used by the college and for its benefit. The defendants did not know the exact source of the funds out of which the warrant was paid, but they were derived from moneys on hand from the taxes of 1906, and arising from other sources, in the hands of the treasurer at the date of the payment of the warrant, and were not funds raised in the year 1907 for the support of the government for that year. The warrant was drawn generally on the treasurer, and should have been paid out of any available funds in his hands. It is denied that the money is now in the hands of Butler, trustee. It has long since been expended by the trustees of the agricultural college for its lawful uses. On March 18, 1906, an act of the legislature was approved, authorizing the establishment, in each congressional district of the State, of a college of agriculture and mechanic arts, and a donation of land and money by citizens and counties therefor; providing for the appointment of trustees for each; and directing the trustees to obtain offers for the location of the college, and to select the location deemed the most advantageous. Pursuant to the act, E. W. Butler was made trustee for the college to be established in the eighth congressional district, which included the County of Morgan. The desirability of making a bid for the location of the college in Morgan County was discussed and favorably regarded by the then board of commissioners and the public. Accordingly, in November, 1906, the order set forth in the petition was passed. In December of the same year there was further consideration and discussion of the subject of what would be necessary in order to secure the location of the college. A resolution was adopted by the commissioners as follows:

"Whereas the State of Georgia is about to establish a School of Agriculture and Mechanic Arts in the Eighth Congressional Dis-

trict of said State; and whereas the law authorizing the same authorizes counties as well as citizens to make donations; and whereas we deem it to the best interest of the county to have said school in this county: Therefore be it resolved that we as Commissioners of Roads and Revenues of Morgan County, acting in our official capacity in lawful meeting assembled, do hereby agree to sell to John Bostwick, trustee for said school, for $1,000 two hundred acres of land located near the Central and Georgia railroads, one and one fourth miles east of Madison, said county, adjoining lands of D. P. Few, Burney, and others, being all the farm owned by Morgan County near said railroads, except thirty acres to be cut off the northern side. Resolved further, that, if this offer is accepted, we also agree to sell to said Bostwick, trustee, for $100 the site of the present old court-house in the City of Madison, said county, containing one acre more or less, provided said Bostwick can sell the same to the City of Madison for park purposes for $10,000, together with the electric lights and water (if waterworks are established) for said school free of charge for ten years. Resolved further, that if this is done, and Morgan's bid is accepted [and] said school located as aforesaid, we also place upon said land $10,000 in improvements under direction of legal authorities."

The proposals made in the resolution were accepted, except that other lands more conveniently located were substituted for the two hundred acres mentioned for a site. Thereafter, on the same day, the commissioners ordered that the committee be paid $10,000 for the agricultural college, and, in pursuance of the order the warrant for that amount was issued. All of these acts were done in good faith for the public interest, in the full belief that they were lawful and proper, and without any anticipated individual benefit. The money was put into the treasury of the college, which was located in the county in accordance with the agreement, and the fund, together with that derived from the sale of the old court-house, was expended by Butler as trustee and treasurer of the college, beginning in May, 1907, in placing college buildings and other improvements on the site of the college. At the March term, 1907, of the superior court the proceedings of the commissioners, being of record on the minutes, together with an amendment of the proposal to sell the pauper farm, being the two hundred acres of land near the Georgia and Central railroads, were submitted to the grand jury

and *reported in their presentments*, which were entered upon the minutes of the court and published in the county newspaper, as follows: "We find that the commissioners have donated $10,000 towards the agricultural college; also have sold the old court-house for $100 to the trustees of the agricultural college, and they selling the same to the City of Madison for $10,000, the difference to go to the agricultural college. Also they are about to sell the poor-house farm and donate the proceeds to the college, excepting $1,960, which is to be used in buying another pauper farm." At the September term, 1907, the grand jury in their presentments again referred to the sale of the pauper farm, and at succeeding terms of the court made favorable references to the sale of the pauper farm. At the September term, 1908, the grand jury passed a resolution approving the action of the county commissioners in helping to obtain the agricultural college, and in donating the pauper farm for that purpose. At the March term, 1909, a similar resolution was adopted, which declared in part: "We put ourselves on record as indorsing the action of our board of commissioners in donating the pauper farm to this institution, and feel that the patriotic efforts of Col. E. W. Butler and Hon. John Bostwick, in securing said institution, should ever be remembered with emotions of gratitude by the people of our county." All of the presentments of the grand juries were published in the county papers, and the entire transactions were matters of notoriety. During the time the $10,000 was being expended there was no protest from any of the taxpayers or citizens; but, so far as known, it met with the approval of the taxpayers of the county. For more than four years a majority of the persons upon the board of commissioners of roads and revenues have been persons other than those composing the board of commissioners when the warrant was issued and paid; more than six years have elapsed since the action of the commissioners of which the petition complains, during all of which time the facts were well and publicly known, and no successful suit could now be maintained for the money. The action of the parties participating in the appropriation of the money was in good faith, and believed to be legal, whether so or not, and was encouraged by the action of the grand juries as well as the approval of the citizens generally. No personal benefit was received by any persons making the appropriation; the entire benefit was received by the college,

which is a branch of the University of Georgia, and the property of the State, with the advantages thereof enjoyed principally by the county. The answer (which was sworn to) concluded with a prayer that the action be dismissed.

The plaintiffs filed a motion to strike specified parts of the answer, including that which set up the statute of limitations. The court, upon the pleadings, without any evidence having been introduced, denied the application and ordered that it be dismissed. The plaintiffs excepted.

*M. C. Few, J. H. Hall, R. R. Arnold,* and *Lamar Hill,* for plaintiffs. *Samuel H. Sibley,* for defendants.

ATKINSON, J. (After stating the foregoing facts.)

If in any case the writ of mandamus should issue at the instance of citizens and taxpayers to compel county commissioners to institute a suit for the recovery of money alleged to have been illegally paid out by the officers of the county, it should not do so unless it clearly appears that the writ should be issued. "Mandamus will not be granted when it is manifest that the writ would, for any cause, be nugatory or fruitless." Civil Code, § 5443. The case was tried by the judge, who passed on the law and the facts as presented by the pleadings, without the introduction of evidence. The purpose of the mandamus sought by the complaining taxpayers was to compel the institution of a suit against former county commissioners, the treasurer, and a trustee of the agricultural college, to recover money alleged to have been illegally paid to the trustees of the college, and used by them in the construction of buildings, more than six years prior to the filing of the application for mandamus. The basis of complaint is the alleged conversion of county funds. The defendants derived no benefit from the money which the plaintiffs seek to have restored to the treasury, and all of their acts and conduct in respect thereto were of general public notoriety. For more than four years prior to the filing of the application for mandamus a majority of the county commissioners were the successors of those who participated in the appropriation of the money to the college. Two of the present defendants were members of the board of commissioners when the appropriation was made, and they, with the other defendants in the present action, are urging the statute of limitations. Even if it be conceded that the county officers had no authority to make the appropriation

complained of, it has been ruled that a suit by a county to recover money illegally drawn from its treasury and misapplied must be brought within four years after the accrual of the cause of action. *Hunt* v. *Burk*, 22 *Ga.* 129; *Cook* v. *Commissioners of Houston County*, 62 *Ga.* 223; Civil Code, §§ 4362, 4371. In the last-cited case an exception was made to the general rule as to the time when the statute of limitations began to run in the case of a sheriff in office. In such case it was held that the statute began to run from the expiration of his term, and not from the time of the illegal withdrawal of the funds from the treasury. The case at bar does not fall within the exception made in that case. More than four years prior to filing of the application for mandamus a majority of the county commissioners have been other than those who participated in the grant of the order appropriating the money. There is no pretense that any one of the persons against whom the action is sought was guilty of any actual fraud or concealment, or did anything to deter the county from bringing its action. Nor is there any contention that the plaintiffs or any other person was not fully advised of the various acts now complained of. Indeed the record shows that every act of theirs was given the utmost publicity, by consideration in the grand jury, publication in the newspapers of the county, and otherwise. It might be said that the statute of limitations is a personal plea, and that it could not be anticipated that such plea would be made to the action when brought. A sufficient answer to such contention is that two of the present commissioners of the county are also sought to be made defendants in the suit that it is contended should be brought, and they are making that point in the present proceeding. It is unnecessary to deal with other questions made in the case, as the county would be barred of its action. There was no error in refusing the writ. *Judgment affirmed. All the Justices concur.*